[Civ. No. 5230. First Appellate District, Division Two.—June 13, 1925.]

## HAROLD G. BLANKMAN, Appellant, v. FREDERICK D. PARSONS, Administrator, etc., Respondent.

[1] New Trial—Refusal of Witness to Testify—Continuance.— The law provides means for compelling a witness to testify; and, therefore, the facts that a witness had promised to testify for plaintiff and had refused to do so a month before the trial, that a continuance had been obtained to try to persuade her to give her testimony, and that counsel had not succeeded in so persuading her and desired another continuance to accomplish this result, give no right to a continuance nor a new trial.

[2] Id.—Payment of Indebtedness—Surprise—Newly Discovered Evidence.—In this action against an administrator to recover certain moneys alleged to have been advanced to the decedent in her lifetime, as there was nothing in defendant's cross-complaint to recover an alleged indebtedness of plaintiff to decedent, or in any other pleading in the case, that would have given warning to plaintiff (who at the time of trial was in Alaska) or his counsel that defendant would introduce testimony to the effect that various payments that had been made by plaintiff to decedent were pursuant to a "grub-stake" agreement between them, and not upon the indebtedness of plaintiff to defendant, and as

---

1. See 5 Cal. Jur. 993; 6 R. C. L. 560.

practically all the testimony introduced in support of the cross-complaint was hearsay testimony and would not have been admissible had its admission been objected to, the trial court should have granted plaintiff's motion for a new trial, where such motion was supported by affidavits showing that subsequent to the trial plaintiff's counsel had come into possession of various documents and writings pertinent to the so-called "grub-stake" agreement and that the indebtedness to decedent had been paid.

[3] ID.—AGREEMENT TO PROCEED WITH TRIAL—WAIVER OF NEW TRIAL. The fact that plaintiff's counsel agreed to proceed with the trial on a given date, whether or not he was ready to proceed, did not affect plaintiff's right to a new trial, where the stipulation did not, in terms, waive the right to ask for a new trial.

[4] ID.—EFFORT TO EXPEDITE TRIAL—DISCRETION—APPEAL.—The effort to expedite the trial of cases and to avoid unnecessary continuances and new trials is certainly commendable upon the part of a trial court, and under ordinary circumstances the exercise of its discretion will not be disturbed, but the peculiar handicap of the plaintiff in this case and the general unsatisfactory condition of the record, which left one unconvinced of the merits of the case, demanded special consideration and greater leniency to the end that justice might be done between the parties.

(1) 13 **C. J.**, p. 160, n. 75; 29 **Cyc.**, p. 873, n. 16.   (2) 29 **Cyc.**, p. 864, n. 42.   (3) 29 **Cyc.**, p. 732, n. 93.   (4) 4 **C. J.**, p. 808, n. 31, p. 831, n. 46.

APPEAL from a judgment of the Superior Court of Alameda County.   T. W. Harris, Judge.   Reversed.

The facts are stated in the opinion of the court.

O. P. Stidger and J. H. Sapiro for Appellant.

Samuel J. Chase for Respondent.

LANGDON, P. J.—This appeal is by the plaintiff from a judgment against him for something over $1,500 upon a cross-complaint filed by defendant as administrator with the will annexed of the estate of Susan H. Parsons, deceased, in an action in which the plaintiff sought to recover from defendant, as such administrator, $985, alleged to have been advanced to decedent upon an open book account.

3. See 20 **Cal.** Jur. 13; 20 **R. C. L.** 225.

The extremely unsatisfactory character of the record from the standpoint of either party and from the standpoint of any court called upon to administer justice and equity demands from us more than the mere technical decision of the abstract right of plaintiff to a continuance of the case and to a new trial after judgment against him. Some idea of the aimlessness and indefiniteness of the record made in the trial court will be gathered from the following statement of facts: On June 9, 1923, an amended complaint was filed by plaintiff, setting up a claim against defendant's decedent for $807 and interest upon an open book account for money had and received during the years 1918 and 1919. A demurrer was filed and overruled and defendant answered denying the indebtedness of decedent to plaintiff and setting up as a counterclaim an indebtedness of plaintiff to decedent, amounting to $1,000. An answer was filed to the cross-complaint, alleging that said indebtedness of $1,000 from plaintiff to decedent had been fully paid and discharged during the lifetime of decedent.

On January 4, 1924, the following order was made by the court: "By consent of both parties, it is by the court ordered that the above entitled cause be and the same is hereby continued to March 13, 1924, at 10 o'clock A. M. In this matter it is stipulated by H. L. Corson, Esq., as counsel for the plaintiff that the cause may proceed and defendant proceed with his testimony on this date regardless of whether the plaintiff is ready to proceed or not."

On March 13, the matter came on for hearing. The first witness was the defendant F. D. Parsons. The record shows that he was called to the stand for the defendant, but he was first questioned by counsel for plaintiff and disclosed that his mother, the decedent, had received a letter from plaintiff in August, 1916, asking for a loan of $1,000. The court then interrupted, asking the purpose of these questions, in view of the allegations of the complaint with reference to the open book account. After a discussion, counsel stated to the court: "We will not take up the time of the court. We have no evidence to offer through that view of it." Counsel for defendant then examined the witness and introduced in evidence a letter written by plaintiff to decedent during her lifetime, dated at Alaska on August 5, 1916, and asking for a loan of $1,000, to be paid the fol-

lowing June. Witness also stated that his mother had re-
ceived various sums of money from plaintiff up to the time
of her death; that in 1897 she had loaned plaintiff about
$70 to go to Alaska and plaintiff had stated that it was to
be a "grub-stake" and that he would "split fifty-fifty"
with Mrs. Parsons on anything he got in Alaska and would
also repay the loan. At this point the court called counsel's
attention to the fact that the pleadings had admittted the
loan of $1,000 from decedent to plaintiff and that the an-
swer to the cross-complaint had asserted this loan had been
paid; that as no proof had been offered upon the question of
payment, and the burden of showing same was upon plain-
tiff and cross-defendant, judgment would have to go against
him and there was no case to rebut by any testimony on the
part of defendant and cross-complainant. Thereupon coun-
sel for cross-complainant rested his case. Counsel for plain-
tiff and cross-defendant then took up the burden and
elicited from the witness the following facts: That Mrs.
Parsons had sent plaintiff a telegram on August 22, 1916,
as follows: "Money sent today by draft in letter." That
on the same day she had sent him a letter reading: "Your
letter of 5th August received. I enclose herewith draft for
$995—proceeds of $1000 loan, less bank exchange. The rate
of interest is 7%. I will write you very soon."

So far the testimony merely covered an admission in the
pleadings—the making of the loan for $1,000. Witness
then testified that plaintiff had sent his mother money since
1916, sometimes by check and sometimes through a Cana-
dian bank; that these payments were generally in amounts
of fifty dollars; that witness knew these payments were made
in 1918; that his mother had told him she received nothing
upon the $1,000 loan in question; that every little while his
mother would come to him and say that plaintiff wasn't
doing as he had agreed to do and he would advise his
mother to write to plaintiff; that his mother had told him
on several occasions, and particularly on one occasion
shortly before her death, that the thousand-dollar loan had
not been paid. The witness was questioned about a trans-
action in which his mother had deeded a house to plaintiff
and asked if the parties had not struck a balance at that
time and settled their claims against each other and he
stated he did not know.

With the record in this condition counsel for plaintiff stated that he would like to bring the officials of the bank through which the payments had been made into court to testify in regard to them. The court stated that a continuance would not be granted because counsel had entered into a binding stipulation to try the case on that day. Counsel protested that he had no way of showing payment except by the books of the bank through which the payments had been made. Counsel for defendant and cross-complainant then took the position that, assuming payments of fifty dollars a month had been made and that they aggregated about $1,800, these payments from 1917 on were under the "grubstake" agreement; that they were made before the deed to the house was executed and after it was executed and after the thousand dollars was borrowed. The court took the position that the issues were known to the parties at the time of the stipulation as to the continuance to March 13th and refused a further continuance. Attorney for plaintiff then attempted to testify with relation to the transfer of the house by Mrs. Parsons to plaintiff, he having acted as Mrs. Parsons' attorney in the transaction. This testimony was objected to upon the ground that it was a privileged communication between lawyer and client and the objection was sustained. That ended the case, except for the renewed request of counsel for plaintiff that he be allowed to show by the bank officials the amount of money that had been paid by plaintiff to Mrs. Parsons. This request was again denied. Thereupon judgment was given for the defendant upon the cross-complaint. No other judgment could have been entered as the plaintiff proved none of the allegations in his complaint and failed to show payment of the debt set up in the cross-complaint, the incurring of which was admitted in the pleadings.

In April, 1924, there was a substitution of attorneys and in May a motion for a new trial was made. It was supported by the affidavit of the former attorney. [1] Some of the statements contained therein are certainly entirely immaterial, such as the statement that a witness had promised to testify for plaintiff and had refused to do so a month before the trial; that a continuance had been obtained to try to persuade her to give her testimony and counsel had not succeeded in so persuading her and desired

another continuance to accomplish this result. The law provides means for compelling a witness to testify and the facts recited give no right to a continuance nor a new trial. However, in this affidavit, there is also the statement that the testimony regarding the so-called "grub-stake" agreement was a complete surprise to the attorney for the plaintiff, who had never heard of the existence of such an agreement; that plaintiff was in Alaska and could not furnish information to counsel to refute the testimony of defendant regarding the making of such an agreement; that plaintiff had informed his counsel that the payments made by him were to discharge his indebtedness to decedent and as an advance to her to enable her to pay her living expenses.

[2] There was nothing in the pleadings that would have given warning to plaintiff or his counsel that this testimony would be introduced, and if it came as a surprise to plaintiff's counsel, justice and equity demanded that he be given an opportunity to dispute the claim put forth. The peculiar circumstances of this case, the plaintiff being in Alaska and the other party to the transaction being dead, coupled with the fact that much of the testimony introduced on behalf of defendant and cross-complainant was hearsay testimony and would not have been admissible had its admission been opposed, require, perhaps, a little more leniency to enable the parties to have the case decided upon its merits and to do justice between the parties.

In support of the motion for a new trial there was also the affidavit of B. M. Aikens, the attorney who was substituted of record in the action, to the effect that in April, 1924, he had obtained from the plaintiff, through the Canadian Bank of Commerce, a large number of documents relating to the matters in dispute in the action, including twenty-seven drafts signed by decedent, drawn upon plaintiff through the Bank of British North America, all of which had been paid by plaintiff in due course; that the first of these drafts was dated August, 1916, and the last of them January 31, 1919, and the others were dated at various times between said dates; that each of said drafts was for fifty dollars and they aggregated $1,350; that among said documents were various letters from the decedent to plaintiff relating to their financial transactions and acknowledg-

ing the receipt of various remittances; that the said letters and signatures to the said drafts are in the handwriting of said decedent and that it can be shown upon a new trial that the plaintiff actually paid to the decedent the said loan of $1,000 set up in the cross-complaint; that a certain written statement referred to in the testimony of Parsons, showing that plaintiff had borrowed $370 from Mrs. Parsons, was a statement sent by plaintiff to Mrs. Parsons, together with a letter demanding attention to the same and in response thereto Mrs. Parsons deeded the house mentioned in the testimony to plaintiff. That among the letters written by decedent to plaintiff which would be produced at a new trial is one mentioning certain remittances received by her from plaintiff and speaking of such remittances as "on the one thousand dollars."

All the testimony referred to in this affidavit was pertinent upon the issue raised at the trial with reference to the so-called "grub-stake" agreement. There was nothing in the pleadings to inform plaintiff that such an agreement would be urged against him. He relied upon proving the monthly payments of fifty dollars each, aggregating over $1,000 in extinguishment of his debt to Mrs. Parsons. He proved these payments by the testimony of the defendant, but such testimony also went further, to his surprise, and applied these payments to an agreement alleged to have been made twenty-five years previously. This was a surprise that ordinary prudence could not have guarded against and plaintiff and cross-defendant was entitled to an opportunity to meet this testimony. Had plaintiff himself been in court the situation might have been somewhat different, but, as we have said, he was in Alaska and his attorney, knowing nothing of this alleged agreement, was powerless to meet this issue without time to communicate with his client. After the judgment against the cross-defendant the attorney discovered documentary evidence to meet the claim which he had never had an opportunity to answer, and in view of all the circumstances of the case, we think a new trial should have been granted to afford him this opportunity. It cannot be argued with reason that these documents should have been obtained earlier because the attorney for plaintiff had no means of knowing that the so-called

"grub-stake" agreement would be set up to explain these monthly payments. The situation is brought squarely within the provisions of section 657, Code of Civil Procedure (subds. 3 and 4) and the plaintiff was entitled to a new trial. **[3]** The remaining consideration is as to whether or not the stipulation hereinbefore set forth by which plaintiff agreed to proceed with the trial on March 13, whether or not he was ready to proceed, affects his right to a new trial. It is not necessary for us to pass upon the question of whether an attorney has the power to make so improvident a stipulation on behalf of his client—to practically stipulate all his rights away—because such stipulation does not, in terms, waive the right to ask for a new trial.

**[4]** The effort to expedite the trial of cases and to avoid unnecessary continuances and new trials is certainly commendable upon the part of a trial court, and under ordinary circumstances the exercise of its discretion will not be disturbed, but the peculiar handicap of the plaintiff in this case and the general unsatisfactory condition of the record, which leaves one unconvinced of the merits of the case, seem to demand special consideration and greater leniency, to the end that justice may be done between the parties.

The judgment is reversed, with instructions to the trial court to grant the plaintiff and cross-defendant a new trial.

Sturtevant, J., and Nourse, J., concurred.