[No. B171700. Second Dist., Div. One. June 28, 2005.]

ABF CAPITAL CORP., Plaintiff and Appellant, v.
ROBERT BERGLASS, Defendant and Appellant.

**COUNSEL**

Brian J. Jacobs for Plaintiff and Appellant.

Sands & Associates, Leonard S. Sands and Heleni E. Suydam for Defendant and Appellant.

**OPINION**

**SPENCER, P. J.—**

## INTRODUCTION

Plaintiff ABF Capital Corp. appeals from a judgment entered after the trial court sustained without leave to amend the demurrer of defendant Robert Berglass. Defendant appeals from an order denying his motion for an award of reasonable attorney's fees.

Plaintiff contends the trial court abused its discretion in denying its motion for a new trial and in sustaining without leave to amend defendant's demurrer. Defendant contends the trial court erred in applying New York law to his motion for an award of reasonable attorney's fees. We reject plaintiff's contentions and that of defendant as well. We consequently affirm both the judgment and the postjudgment order.

## FACTS

We derive the pertinent facts from the complaint, filed on December 30, 2002, and from the assumption agreement incorporated in the complaint. Plaintiff incorporated in Delaware but has its principal place of business in New York. Defendant currently resides in California. On December 30, 1982, defendant obtained six units of interest in Regent Energy Partners, a New

York limited partnership in the business of acquiring oil and gas property in Texas and Louisiana and the drilling, development and operation of oil and gas wells on such property.

On December 31, 1982, the partnership's contracts for certain oil and gas subleases became effective. Each of those subleases required the partnership to pay plaintiff a minimum annual royalty as the subleases defined that term. The partnership could defer payment, however, if it delivered to plaintiff agreements by which each limited partner assumed liabilities. Defendant executed such an agreement on December 17, 1982.

Sections 1 and 2 of the assumption agreement require defendant to assume personal liability for his pro rata share of the partnership's deferred minimum annual royalties under the subleases. In accord with section 3, the partnership must pay plaintiff 50 percent of the sums otherwise to be distributed to defendant as a limited partner in order to reduce his deferred obligation.

Section 8 of the agreement requires the partnership to maintain books and records delineating all liabilities the partner assumes under the agreement. The partnership must provide the partner with a statement of liabilities whenever the amount for which the partner is liable changes.

Section 10 of the agreement requires the partner to pay attorney's fees that the partnership or the sublessor incur in enforcing the agreement with the result that there is an adjudication of the partner's breach. Section 12 states that the agreement "is governed by and construed under the laws of the State of New York."

Plaintiff is and always has been the intended third party beneficiary of the assumption agreement. The partnership performed all of its obligations under the agreement. The balance of the sums due under the agreement should have been paid on December 31, 1994. As of January 1, 1995, defendant had breached the agreement, causing plaintiff to suffer $81,000 in damages plus interest due from the date of default.

## DISCUSSION

### *ABF Capital's Appeal*

*The Trial Court Properly Denied the Motion for New Trial*

The court may grant a motion for a new trial when there has been "[i]rregularity in the proceedings of the court . . . , or any order of the court or abuse of discretion by which either party was prevented from having a fair

trial," as long as the irregularity "materially affect[s] the substantial rights of [the moving] party." (Code Civ. Proc., § 657, subd. 1.) The court also may grant a motion when there has been "[a]ccident or surprise [materially affecting the substantial rights of a party], which ordinary prudence could not have guarded against." (*Id.*, subd. 3.)

■ We will not disturb the trial court's determination of a motion for a new trial unless the court has abused its discretion. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493].) When the court has denied a motion for a new trial, however, we must determine whether the court abused its discretion by examining the entire record and making an independent assessment of whether there were grounds for granting the motion. (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160–1161 [79 Cal.Rptr.2d 641].)

Plaintiff initially argues that the trial court's failure to apply the doctrine of judicial estoppel to prevent defendant from asserting a changed position in his reply to plaintiff's opposition to the demurrer prejudiced plaintiff. As plaintiff sees it, this failure entitled it to a new trial.

■ The courts invoke judicial estoppel to prevent judicial fraud from a litigant's deceitful assertion of a position completely inconsistent with one previously asserted, thus compromising the integrity of the administration of justice by creating a risk of conflicting judicial determinations. (*Furia v. Helm* (2003) 111 Cal.App.4th 945, 958 [4 Cal.Rptr.3d 357]; *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118 [102 Cal.Rptr.2d 28], review den. Feb. 21, 2001.) The inconsistent position generally must be factual in nature. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1245 [132 Cal.Rptr.2d 57].)

■ As a general rule, the court should apply the doctrine only when the party stating an inconsistent position succeeded in inducing a court to adopt the earlier position or to accept it as true. If the party did not succeed, then a later inconsistent position poses little risk of inconsistent judicial determinations and consequently introduces " 'little threat to judicial integrity.' " (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, *supra*, 106 Cal.App.4th at p. 1246.)

To the extent that defendant may have asserted inconsistent positions in support of his demurrer, they were inconsistent *legal* positions asserted in the *same action*. The trial court had ample opportunity to examine both positions

closely, taking into consideration the opposing party's objection and both parties' argument, which was extensive, and to determine whether defendant had been deceitful in asserting the latter position or, as appears to be the case here, merely had been ignorant when asserting the former position. (*Thomas v. Gordon, supra,* 85 Cal.App.4th at p. 118.) It consequently was unnecessary to invoke judicial estoppel.

The questions remain whether defendant's change in position misled plaintiff to its prejudice (*Pinkham & McDonough v. McFarland & Elrod* (1855) 5 Cal. 137, 138), whether the court acted in a manner that deprived plaintiff of a fair hearing (*Gay v. Torrance* (1904) 145 Cal. 144, 149–150 [78 P. 540]; *Lowe v. Massachusetts Mut. Life Ins. Co.* (1976) 54 Cal.App.3d 718, 740 [127 Cal.Rptr. 23]), or whether defendant raised a new issue that did not appear in his demurrer, thus subjecting plaintiff to unfair surprise (*Blankman v. Parsons* (1925) 73 Cal.App. 218, 224–225 [238 P. 728]). If so, the trial court abused its discretion in denying the motion for a new trial.

Plaintiff has not demonstrated that any of these grounds exist. Defendant's change in position did not mislead plaintiff, who had an opportunity to, and did, object to it and attempt to refute it in extensive oral argument at the hearing on the demurrer. Inasmuch as the court gave plaintiff a full opportunity to argue against the change in position, it did nothing to deprive plaintiff of a fair hearing. Finally, the *issue* was whether the complaint was time-barred. That is the same issue raised in defendant's demurrer. His reply simply took an alternative approach to the issue to that taken in the demurrer, apparently after he belatedly discovered the applicable law. In short, the trial court properly denied the motion for a new trial.

*The Trial Court Did Not Err or Abuse Its Discretion in Sustaining the Demurrer Without Leave to Amend*

■ A demurrer challenges the sufficiency of the complaint by raising questions of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 [104 Cal.Rptr.2d 439].) Where the complaint discloses on its face that the statute of limitations has run on the causes of action stated in the complaint, it fails to state facts sufficient to constitute a cause of action. (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971–972 [114 Cal.Rptr.2d 748], review den. Mar. 27, 2002.)

■ When considering a demurrer, the trial court must accept as true all material facts pleaded in the complaint and those arising by reasonable implication. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204]; *Montclair Parkowners Assn. v. City of Montclair* (1999)

76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].) The trial court may consider as well matters of which it may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) On appeal, we exercise our independent judgment to determine whether the complaint states a cause of action as a matter of law and apply the abuse of discretion standard to the trial court's denial of leave to amend. (*Montclair Parkowners Assn., supra,* at p. 790; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497–1498 [57 Cal.Rptr.2d 406].)

■ In asserting error in sustaining the demurrer, plaintiff argues that the trial court applied New York law improperly to conclude that the complaint was time-barred. Where the court must determine the enforceability of a nonadhesive contract's choice of law provisions, California favors enforcement. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148].)

■ California courts adhere to choice of law provisions and apply the law of the chosen state after engaging in a two-part analysis. First, the court must determine that the foreign state's relationship to the parties or the contract subject matter is substantial or there is another reasonable basis for selecting that state. Second, the court must decide that applying the chosen state's law would not contravene the fundamental public policy of another state, which would provide the applicable law had the parties not made a different choice, and which has a materially greater interest in the determination of the issue at hand than does the chosen state. (*Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th at p. 465; *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 896 [72 Cal.Rptr.2d 73].)

The complaint alleges that plaintiff, a Delaware corporation, is an intended third party beneficiary of the contract and has its principal place of business in New York. It therefore resides in New York. (*Pac. Gas etc. Co. v. State Bd. of Equal.* (1955) 134 Cal.App.2d 149, 152–153 [285 P.2d 305]; see also *Coulston v. Cooper* (1966) 245 Cal.App.2d 866, 869 [54 Cal.Rptr. 302].) The complaint further alleges that defendant executed the agreement because he was part of a New York limited partnership (whose general partner is a New York corporation), thereby guaranteeing payment of his pro rata share of the royalties the partnership owed plaintiff. In other words, one party to the contract was a New York resident when its general partner executed the contract.[1]

■ That one of the parties resides in a foreign state gives the parties a reasonable ground for choosing that state's law. (*Nedlloyd Lines B.V. v.*

[1] The complaint alleges that defendant was a California resident when the action was filed but neither the complaint nor the contract specify defendant's residence when he executed the contract in 1982 or breached it in 1994.

*Superior Court, supra,* 3 Cal.4th at p. 467; *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 258 [15 Cal.Rptr.3d 244], review den. Sept. 22, 2004.) The same principle should apply when the intended third party beneficiary of the contract resides in the chosen state.

The partnership had the duties of accounting and financial administration of the contract, including the maintenance of "books and records setting forth the liabilities assumed" in the contract. While the contract does not state the intended place of the remainder of its performance, both contract language (see paragraph 3) and allegations of the complaint (see paragraphs 11 and 12) support an inference that the contract was to be performed, i.e., contractual payments were to be received (*Ury v. Jewelers Acceptance Corp.* (1964) 227 Cal.App.2d 11, 16–17 [38 Cal.Rptr. 376]; see also *Sarlot-Kantarjian v. First Pa. Mortg. Trust* (9th Cir. 1979) 599 F.2d 915, 917), in New York.

In summary, New York has a substantial relationship with the parties to and the subject matter of the contract: it states the obligation of a New York entity's limited partner to a New York resident who is its intended beneficiary and it is to be performed in New York. There also is another reasonable basis for choosing New York law: one party to the contract resides in New York (*Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th at p. 467), as does the contract's intended beneficiary.

 The second part of our analysis requires us to determine whether applying the chosen state's law would contravene the fundamental public policy of another state, which would provide the applicable law had the parties not made a different choice, and which has a materially greater interest in the determination of the issue at hand than does the chosen state. For the purpose of performing this analysis we assume that California law would apply had the parties not chosen otherwise. We do so because if New York law would apply in any event, there can be no contravention of its fundamental public policy.

 Application of New York's six-year limitation period (N. Y. C.P.L.R. § 213(2)) and the requirement that a valid waiver of the limitation period must be made after accrual of the cause of action (N. Y. Gen. Oblig. Law § 17-103(1)) results in a shorter period in which to bring an action upon a contractual obligation or liability than does application of California's four-year limitation period and four-year tolling limit (Code Civ. Proc., §§ 337, 360.5). California allows contracting parties to both shorten and extend limitation periods and has no discernible fundamental policy against the application of other jurisdictions' limitation periods. (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1547–1549 [46 Cal.Rptr.2d 33].)

In summary, New York has a substantial relationship with the parties and the subject matter of the contract, there are other reasonable bases for choosing New York law, and California has no fundamental public policy with which application of New York law would conflict. The trial court therefore correctly found the choice of law provision to be enforceable.

Plaintiff next argues that the trial court misapplied New York's law in selecting a limitations period. Plaintiff misunderstands the task before the trial court. The contractual choice of law provision provides that "[t]his Agreement is *governed by and construed under the laws* of the State of New York." (Italics added.) New York law therefore applies to ascertain the scope of the provision. What we mean by "scope" is the narrowness or breadth we construe the contractual provision to have, not the narrowness or breadth of New York's choice of law principles.

Plaintiff has briefed in detail and requested that we take judicial notice of case law explicating New York's conflict of law principles (see, e.g., *Gambar Ent. v. Kelly Serv.* (1979) 69 A.D.2d 297, 304 [418 N.Y.S.2d 818, 822]; *Sears, Roebuck v. Enco Assoc.* (1977) 43 N.Y.2d 389, 397–398 [401 N.Y.S.2d 767, 772, 372 N.E.2d 555]; cases cited in *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 63–64 [131 L.Ed.2d 76, 115 S.Ct. 1212]; cases cited in *Cronin v. Family Educ. Co.* (E.D.N.Y. 2000) 105 F.Supp.2d 136, 139; cases cited in *Cafferty v. Scotti Bros. Records, Inc.* (S.D.N.Y. 1997) 969 F.Supp. 193, 203; and cases cited in *Insurance Co. of North America v. ABB Power Generation* (S.D.N.Y. 1996) 925 F.Supp. 1053, 1059) but has not seen fit to do the same with respect to New York contract construction principles. Construction of the choice of law contractual provision consequently becomes a question of California law. (*Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th at p. 469, fn. 7; *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra,* 38 Cal.App.4th at p. 1540, fn. 5.)

Applying California's rules of contract construction and giving consideration to the meaning and usage of the words "laws" and "law," the court holds in *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc., supra,* 38 Cal.App.4th at pages 1540–1541 that the words denote a state's entire body of statutory law, which includes statutes of limitations. (Accord, *Hughes Electronics Corp. v. Citibank Delaware, supra,* 120 Cal.App.4th at p. 260.) In other words, a provision such as that found in the instant agreement has the greatest possible breadth.

Finally, plaintiff argues that the trial court erroneously failed to harmonize paragraph 12 of the contract, the choice of law provision, and paragraph 9, which waives the statute of limitations. As plaintiff sees it,

inasmuch as New York law does not allow an agreement to waive the limitations period before the accrual of the cause of action (N. Y. Gen. Oblig. Law § 17-103(1); *Bayridge Air Rights v. Blitman Const. Corp.* (1990) 80 N.Y.2d 777, 779 [587 N.Y.S.2d 269, 270–271, 599 N.E.2d 673]), rules of contract construction require that the trial court not apply New York law. The argument defies reason. There is no rule of contract construction—in either New York or California—that requires a court to harmonize two contractual provisions when one is void from the outset as against public policy. (*Bayridge*, at p. 779.)

In summary, the trial court did not commit any legal error in its examination of the contract's choice of law provision or application of California's and New York's laws as appropriate. As the trial court correctly found, New York law—*including* its pertinent statute of limitations—applies and demonstrates that the appropriate six-year limitations period (N. Y. C.P.L.R. § 213(2)) bars prosecution of plaintiff's action. Inasmuch as nothing plaintiff could allege would change this result, the trial court did not abuse its discretion in sustaining defendant's demurrer to the complaint without leave to amend.

### *Berglass's Appeal*

*The Trial Court Correctly Applied New York's Law Governing Contractual Attorney's Fee Clauses*

After he obtained judgment in his favor, defendant sought attorney's fees pursuant to Civil Code section 1717, subdivision (a), citing section 10 of the assumption agreement, which states, "The Partner agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by the Partnership or Sublessor in the enforcement of this Agreement wherein it is decided or adjudicated that the Partner has breached this Agreement." Applying New York law, the trial court denied defendant's request on the ground that there was no mutuality of remedy available to him.

Defendant asserts the trial court erred in applying New York law, in that it contravenes a fundamental public policy of California. We need not determine whether New York law contravenes a fundamental public policy of California. Had the parties not made a choice of law, it would be New York law—not that of California—which would apply.

The first part of our choice of law analysis is, of course, identical to that utilized in considering ABF Capital's appeal. New York has a substantial relationship with the parties and the subject matter of the assumption

agreement. There also is another reasonable basis upon which the parties could have selected New York law.

This brings us to the second part of our analysis, the first step of which is to determine whether California law would be applicable if the parties had not made a different choice of law. The Restatement Second, Conflict of Laws, section 188, governs this determination. (See *Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th at p. 465.)

When the parties have not made a choice of law, section 188 determines who has the most significant relationship to the transaction and the parties by applying the principals of Restatement Second, Conflict of Laws, section 6. In doing so, the court is to consider the place at which the parties made the contract, the place at which their negotiations took place, the place of the contract's performance, the location of the contract's subject matter and, as pertinent here, the residence, place of incorporation and place of business of the parties. (Rest.2d, Conflict of Laws, § 188(2).) If the contract was negotiated and performed in the same place, that forum's law ordinarily applies. (*Id.,* § 188(3).)

Restatement Second, Conflict of Laws, section 6(2), identifies the factors relevant to the choice of law determination as the interstate system's needs, the forum's pertinent policies and those of other interested states as balanced by the competing states' respective interests in determining the particular issue, the protection of reasonable expectations, the policies that underlie the pertinent area of law, the provision of uniformity, predictability and certainty in the result and the ease with which the applicable law can be determined and applied. (Rest.2d, Conflict of Laws, § 6(2).)

We do not know where defendant executed the contract or the parties negotiated the contract, which distinguishes this case from *ABF Capital Corp. v. Grove Properties Co.* (2005) 126 Cal.App.4th 204 [23 Cal.Rptr.3d 803], where there was evidence that the contract was negotiated in both California and New York and was made in California. (*Id.* at p. 222.) Its place of performance was New York, which also was the residence and place of business of at least one party to the contract and its intended third party beneficiary, whose place of incorporation is Delaware. Most of the identified contacts favor application of New York law, inasmuch as neither party advocates application of Delaware law. Defendant's current residence is

California but that is California's only contact with this case. Our analysis is only partially completed, however. We now must apply this information to the principles enunciated in Restatement Second, Conflict of Laws, section 6(2).

██ California's policies pertaining to contractual attorney's fee provisions differ from those of New York. Civil Code section 1717, subdivision (a), requires mutuality of remedy with respect to contractual attorney's fee provisions. New York, in contrast, requires strict interpretation of non-consumer contractual provisions awarding attorney's fees with the goal of avoiding the imposition of any duty the parties did not intend to create. (*Oscar Gruss & Son, Inc. v. Hollander* (2d Cir. 2003) 337 F.3d 186, 199; but see N. Y. Gen. Oblig. Law § 5-327(2).) California is the judicial forum and it regulates the conduct and fees of the attorneys practicing in the state. These considerations give California a significant interest in the issue. We do not agree with the *Grove Properties* court, however, that California's interest is materially greater than New York's. (*ABF Capital Corp. v. Grove Properties Co., supra,* 126 Cal.App.4th at pp. 219–220.)

It would be reasonable for the parties to expect their choice of law to govern the issue of attorney's fee payment and fulfilling that expectation would bring uniformity, certainty and predictability to the result. New York has a significant interest in abiding by the parties' contractual intentions and fulfilling their reasonable expectations with regard to the payment of attorney's fees. At best, New York and California have equal interest in the issue. It is no more difficult for the forum state to determine and apply New York law than its own law. Finally, the policy underlying both California's and New York's pertinent law—different as that law may be—is the same: enhancing free and *equal* access to the courts, in California's case by preventing the oppressive use of one-sided fee provisions and in New York's case by enforcing strictly the parties' intentions. (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1187–1188, 1191 [101 Cal.Rptr.2d 532]; *Oscar Gruss & Son, Inc. v. Hollander, supra,* 337 F.2d at p. 199.)

New York has the most significant contacts in this case, and the principles set forth in Restatement Second, Conflict of Laws, section 6(2), all favor the selection of New York law as that applicable to the determination of the attorney's fee issue. Having determined that New York law would apply in any event, our analysis is complete. Inasmuch as California law would not apply if the parties had not made a choice of law, it is immaterial whether the application of New York law to the attorney's fee issue would contravene a fundamental public policy of California.

We affirm the judgment of dismissal entered after the trial court sustained without leave to amend defendant's demurrer to plaintiff's complaint and the order denying defendant's request for attorney's fees.

Rothschild, J., and Suzukawa, J.,* concurred.

A petition for a rehearing was denied July 26, 2005, and the petition of appellant ABF Capital Corp. for review by the Supreme Court was denied October 19, 2005. Kennard, J., did not participate therein.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.