Filed 11/5/24  Flick v. United Services Automobile Association CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KARA FLICK,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION,<br><br>    Defendant and Respondent. | 2d Civil No. B330507<br>(Super. Ct. No. 21CV02626)<br>(Santa Barbara County) |

Kara Flick appeals from the judgment after a jury rejected her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  Flick contends the judgment should be reversed due to juror misconduct.  We disagree, and affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *Background*

After sustaining injuries in an automobile accident caused by Francisco Reyes, Jr., Flick had her attorney send Reyes's

insurer, the United Services Automobile Association (USAA), a letter explaining the severity of her injuries and an authorization for the release of her medical records. Flick's attorney followed up with a settlement demand two months later, requesting that USAA pay Flick the entirety of Reyes's $100,000 policy limit in exchange for a release of liability. Attached to the demand was a single medical record from Flick's neurologist.

USAA investigated Flick's claim and determined it did not have sufficient information to accept or reject her demand. Flick then filed a personal injury lawsuit against Reyes. The jury found in her favor and awarded nearly $1.7 million in damages.

Reyes conveyed his rights against USAA to Flick in exchange for an agreement not to execute the judgment against him. Flick then sued USAA for breach of contract and breach of the implied covenant of good faith and fair dealing.

*Trial*

At trial, a USAA claims adjustor admitted that Reyes was fully at fault for the accident with Flick. Reyes could therefore be exposed to liability in excess of his policy limits—if Flick provided sufficient documentation to support her claim.

 The claims adjustor testified that Flick's personal injury attorney sent him a letter in April 2017 explaining the severity of Flick's injuries. Attached to the letter was an authorization for the release of Flick's medical records. The attorney sent a settlement demand in June. Attached to the demand was a single medical record from Flick's neurologist.

The adjustor testified that the authorization to release Flick's medical records was invalid because it was not properly executed and did not include the addresses or phone numbers of

2

Flick's medical care providers.  He therefore told Flick's attorney that USAA needed more information regarding Flick's injuries.

Other witnesses reiterated much of the claims adjustor's testimony.  For example, the USAA claims service manager who supervised the claims adjustor testified that in most cases medical records would be attached to a settlement demand.  If a demand did not include the records USAA would need a claimant's authorization so it could get them itself.  The authorization Flick provided was invalid, however, because it did not include a "wet" signature, did not list USAA as a potential recipient of her records, and did not list her medical care providers.

USAA's expert on insurance claims handling and another of its claims service managers both agreed with the supervisor that Flick's authorization was invalid.  Flick's personal injury attorney disagreed, claiming that he had never had a problem with electronic signatures and that USAA could have written in the names of Flick's care providers.  Flick's expert witness also testified that the authorization was valid.

Several additional witnesses testified about Flick's June 2017 settlement demand and USAA's response that it had insufficient information to accept or reject it.  The supervising claims service manager testified that the medical records attached to the demand stated that Flick's neurological exam was normal.  He also said that the records showed no evidence of significant traumatic brain injury and that the origin of Flick's claimed speech issues was unknown.  USAA therefore needed additional records before it could determine the value of Flick's claim.  Those records could have included the medical bills Flick provided to her own insurance company, the multiple doctor's

3

notes she had excusing her from work, or the thumb drive recording her purported speech problems, all of which were entered into evidence at her personal injury trial.[1]  Because they were not provided to USAA, it was "very difficult to place a value on" Flick's claim.

The supervising claims service manager testified that he expected the claims adjustor to tell Flick that USAA could not accept or reject her settlement demand without more information.  The adjustor did just that.  The supervisor also detailed how the adjustor sent Flick approximately 10 requests for information after receiving her demand.  These requests specified that USAA could not evaluate Flick's claim without more information and that USAA did not have a valid medical authorization.  But USAA received nothing more than the single medical record from Flick's neurologist that was initially submitted with the June 2017 settlement demand.  According to USAA's expert on insurance claims handling, Flick "ghosted" USAA.

Flick's personal injury attorney countered much of this testimony.  He testified that USAA did not tell him the medical authorization was invalid until after a verdict was reached in Flick's case against Reyes.  He claimed that if USAA had asked him to provide a wet signature he "absolutely" would have.  He believed he "had given [USAA] all . . . that [it] needed" to evaluate Flick's claim, including the "most important record from the doctor who deals with traumatic brain injuries."

Flick's expert testified that USAA's handling of the settlement demand "was clearly unreasonable" and "far below the

---

[1] Flick's personal injury attorney said he was not in possession of this evidence when he sent the demand letter.

standard of industry handling." The response to Flick's demand was "inept" because the claims adjustor "did next to nothing to verify it." The "failure to follow up" on the demand was "horrible." The expert admitted, however, that the single medical record Flick provided may not have been sufficient to pay out Reyes's policy limits. He also admitted that it was "reasonable" for USAA to question the validity of the medical authorization.

USAA's expert countered that the handling of Flick's claim was "consistent with industry standards." Her settlement demand was not reasonable because "the extent of the information that was provided, the medical information, was not adequate to justify the payment of the $100,000[] policy limit[]." Flick also "ignored" USAA's requests for additional information. Had that information been provided, it was "more likely than not" that "the claim would have been paid."

During closing arguments, several portions of the claims adjustor's testimony were read to the jury. They were also projected on a screen.

By a vote of nine to three, the jury found that Flick did not make a reasonable settlement demand of USAA and rejected her claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court polled the jury, and each juror confirmed their vote.

*New trial motion*

Several days after the conclusion of trial, a juror contacted Flick and "told her about . . . issues" he allegedly perceived with fellow juror D.C. After investigating the matter, Flick came to believe that D.C. did not hear much of the USAA claims adjustor's testimony. She believed this constituted misconduct, and moved for a new trial.

Flick submitted a declaration from D.C. in support of her motion. In the declaration D.C. said that his hearing aids were being repaired when trial began, which hindered his ability to hear "much" of the claims adjustor's testimony. He could nevertheless hear the adjustor's testimony when the adjustor spoke directly into the microphone on the witness stand, but the adjustor "did not do that for all of his testimony." D.C. could also hear the adjustor's testimony when he held down the jack on the hearing device provided to him by the trial court. D.C. did not claim he had trouble hearing the testimony of any other witness. Nor did he claim that he had any trouble viewing or reading any of the exhibits admitted into evidence.[2]

USAA submitted a declaration from the jury foreperson with its opposition to Flick's motion. The foreperson said that D.C. and four others all said that Flick made a reasonable settlement demand during the initial informal poll of jurors. But during the jury's final vote D.C. changed his position and voted that Flick did not make a reasonable settlement demand. He then asked, "Wait, what was the question?" The foreperson reread the question and gave D.C. the special verdict form to look over. After doing so D.C. confirmed his belief that Flick did not make a reasonable settlement demand.

In a second declaration submitted with USAA's opposition, another juror confirmed that D.C. originally voted that Flick made a reasonable settlement demand. The jury then spent "many hours" reading and discussing that issue alongside the exhibits entered into evidence, in particular Flick's settlement

---

[2] The trial court ruled that several portions of D.C.'s declaration were inadmissible under Evidence Code section 1150. Flick does not challenge that ruling here.

demand and its supporting documents. Following the final vote the juror said that "multiple jurors" asked whether D.C. understood that he was voting against Flick. Each time D.C. responded "Yes, I do."[3]

At the hearing on Flick's motion, the trial court said that it was "quite possible . . . there [was] some degree of . . . misconduct" if D.C. did not hear portions of the claims adjustor's testimony but "never bothered to let anybody know." But the court had "trouble connecting that misconduct, to whatever degree it existed, to [D.C.'s] ultimate vote":

> "It's just hard for me to imagine that there was something [D.C.] could have missed. Even if [D.C.] didn't hear the testimony of [the adjustor] at all, it's hard to see why anything would have been lost in all that transpired afterwards.
>
> "So, I'm not seeing how to make the connection between the hearing difficulties and [D.C.'s] confusion about [the question about the reasonableness of Flick's settlement demand]."

The court noted that "the facts were, essentially, undisputed. Everything was gone over a multitude of times. [¶] There was nothing special about any portion of the . . . trial that would have disabled a juror from knowing all of the facts." It was also difficult for the court to "imagine how it could have been unclear to [D.C.] that he was voting against . . . Flick, when the result was that deliberations stopped . . . and . . . there was, now, an answer." It denied Flick's motion.

---

[3] Flick did not object to these portions of either this juror's or the foreperson's declaration.

7

DISCUSSION

Flick contends the trial court should have granted her new trial motion because D.C.'s failure to inform the court that he could not hear "much" of the claims adjustor's testimony constituted prejudicial misconduct.  We are not persuaded.

A trial court has broad discretion to grant or deny a motion for new trial.  (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871.)  When evaluating whether the denial of such a motion constitutes an abuse of discretion, we "examin[e] the entire record and mak[e] an independent assessment of whether there were grounds for granting" it.  (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832; see also *People v. Ault* (2004) 33 Cal.4th 1250, 1265-1266 [denial of new trial motion based on finding that juror misconduct was harmless subject to de novo review].)  Prejudicial juror misconduct provides grounds for granting a new trial motion.  (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 411 (*Hasson*).)

A juror's failure to inform a court of their inability to hear a witness's testimony can constitute misconduct.  (*People v. Neely* (1979) 95 Cal.App.3d 1011, 1018-1019; see also *Hasson, supra*, 32 Cal.3d at p. 411 ["The duty to listen carefully during the presentation of evidence at trial is among the most elementary of a juror's obligations"].)  If such misconduct occurs, we presume it was prejudicial.  (*Hasson*, at p. 416.)  That "presumption is not conclusive," however, and may be rebutted by a showing that there was no "reasonable probability of actual harm to the complaining party."  (*Id.* at p. 417.)  Factors to consider "when determining whether the presumption [has been] rebutted are the strength of the evidence that misconduct occurred, the nature

8

and seriousness of the misconduct, and the probability that actual prejudice may have ensued." (*Ibid.*)

Based on our examination of the entire record, we conclude the trial court did not abuse its discretion in denying Flick's new trial motion. Even if we presume that D.C.'s failure to inform the court that he was unable to hear portions of the claims adjustor's testimony constituted prejudicial misconduct, USAA successfully rebutted the presumption of prejudice by showing there is no reasonable probability that D.C.'s misconduct actually harmed Flick.

In our view, the impact of D.C.'s misconduct was minimal. While D.C. said that he was unable to hear "much" of the claims adjustor's testimony because the adjustor did not always speak directly into the microphone, D.C. could hear the testimony when he held down the jack on the hearing device provided to him. And much of the adjustor's testimony consisted of facts regarding his communications with Flick's attorney—facts that were undisputed.

What was disputed—whether Flick's settlement demand was reasonable—was the subject of other witness testimony, including USAA's expert on insurance claims handling, its supervising claims service manager, Flick's personal injury attorney, and her expert witness on insurance claims handling. D.C. made no claim he was unable to hear the testimony of these witnesses. And these witnesses reiterated much of the claims adjustor's testimony, including by describing Flick's settlement demand, the medical authorization she provided, and USAA's investigation and evaluation of Flick's claim. This testimony was directly relevant to the first question jurors had to decide: whether Flick made a reasonable settlement demand.

9

D.C. was also able to examine documents relevant to the reasonableness of the settlement demand. Flick's April 2017 letter describing her injuries was projected on a screen during trial. So were the medical authorization and medical records attached to that letter. So was her settlement demand. And so was USAA's letter telling Flick they could not accept or reject her demand without more information.

Flick admits that D.C. was able to hear the adjustor's testimony when he held down the jack on his hearing device and when the adjustor spoke directly into the microphone. She also admits that D.C. was able to hear the other trial witnesses and see the primary documents related to the reasonableness of her settlement demand. Relying on *State v. Turner* (Wis.Ct.App. 1994) 521 N.W.2d 148, however, Flick counters that this evidence would not have enabled D.C. to evaluate the adjustor's credibility. But in *Turner*, two jurors were unable to hear the testimony of a pair of critical witnesses—including one of the alleged victims—which prevented them from evaluating the witnesses' credibility. (*Id.* at p. 151.) Here, in contrast, D.C. *was* able to hear some of the adjustor's testimony. And nothing in his declaration suggests that his ability to evaluate the adjustor's body language and demeanor was hindered in any way. (Cf. *People v. Lopez* (2022) 75 Cal.App.5th 227, 233 [witness's body language and demeanor can shed light on their credibility].)

The other cases on which Flick relies are similarly distinguishable. In *State v. Hayes* (Kan. 2001) 17 P.3d 317 at page 319, a juror was unable to hear the entire testimony of the defendant. In *Commonwealth v. Greiner* (Pa. Super. Ct. 1983) 455 A.2d 164 at page 167, a juror was unable to hear the direct examination, cross-examination, and portions of redirect

10

examination of the commonwealth's chief witness. The record does not affirmatively show that D.C. missed such critical testimony here.

Alternatively, Flick argues USAA has not rebutted the presumption of prejudice because the evidence that her settlement demand was not reasonable and that USAA's investigation of her claim was thorough was "anything but 'overwhelming.' " (Citing *Hasson*, *supra*, 32 Cal.3d at p. 417.) But nothing in *Hasson* limits a trial court to considering the strength of the evidence when deciding whether the presumption of prejudice has been overcome. "[C]ases are not authority for propositions that are not considered." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.) Moreover, the jury determined the settlement demand here was *not* reasonable. We are bound by that factual determination on appeal. (*County of San Diego v. Woodward* (1986) 186 Cal.App.3d 82, 89.)

Flick next claims that D.C. could not hear portions of juror deliberations, undermining his ability to deliberate and strengthening her assertion that USAA has not rebutted the presumption of prejudice. But D.C. did not state as much in his declaration. The trial court also struck the portion of the foreperson's declaration that might support Flick's claim. Flick did not challenge that ruling during the hearing on her new trial motion. She cannot do so for the first time on appeal. (Evid. Code, § 354; *People v. Ervine* (2009) 47 Cal.4th 745, 783 ["proponent of evidence must identify the specific ground of admissibility at trial or forfeit that basis of admissibility on appeal"].)

11

Finally, Flick claims that D.C.'s alleged confusion during deliberations and the subsequent polling of the jury undermines any finding that the presumption of prejudice has been rebutted. But the evidence she cites in support of this claim—portions of the declarations of D.C. and another juror—was stricken by the trial court. Because she does not challenge that ruling here, we cannot consider that evidence. (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 815.) What the admitted evidence *does* show is that D.C. confirmed multiple times that he voted that Flick did not make a reasonable settlement demand: After the foreperson read the question about whether Flick's demand was reasonable, D.C. confirmed his belief that it was not. He then told multiple jurors that he understood that he was voting against Flick. And he confirmed his position when the trial court polled the jury. Based on this record, we see no reasonable probability that D.C.'s alleged juror misconduct actually harmed Flick.

## DISPOSITION

The judgment is affirmed. USAA shall recover its costs on appeal.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.                    CODY, J.

12

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____

Shernoff Bidart Echeverria, Ricardo Echeverria, Reid Ehrlich; Hobbs Law Group, Kristin Hobbs; Arkin Law Firm and Sharon J. Arkin for Plaintiff and Appellant.

DKM Law Group, Robert S. McLay, Brian R. Davis and Jessica J. Ross for Defendant and Respondent.