Filed 4/5/21  Miliate v. San Diego House of Motorcycles CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BLAKE MILIATE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAN DIEGO HOUSE OF MOTORCYCLES, INC.,<br><br>Defendant and Appellant. | D077104<br><br><br><br>(Super. Ct. No. 37-2018-00035131-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Dismissed.

Severson & Werson, Jan T. Chilton, John B. Sullivan, and Erik Kemp for Defendant and Appellant.

Kemnitzer, Barron & Krieg, Bryan Kemnitzer, Mark A. Chavez, Adam J. McNeile, and Kristin Kemnitzer for Plaintiff and Respondent.

Defendant San Diego House of Motorcycles, Inc. (SDHM), a motorcycle dealership, moved to compel arbitration of a customer's individual claims and to stay the court action pending completion of the arbitration.  The trial court granted the motion, sending the plaintiff's individual claims to arbitration.

The parties subsequently entered a stipulation to stay the court proceedings pending the outcome of the arbitration. SDHM appealed, arguing the court erred in applying California law to the dispute.

Although an order granting a motion to compel arbitration is not appealable (*Lacayo v. Catalina Restaurant Group Inc.* (2019) 38 Cal.App.5th 244, 253 (*Lacayo*)), SDHM contends it has standing to appeal because (1) the trial court denied its motion to compel arbitration by retaining jurisdiction over claims for public injunctive relief, which SDHM maintains plaintiff Blake Miliate did not actually seek; (2) SDHM received relief different from the relief it sought; and (3) the court failed to affirmatively enforce the arbitration agreement's class action waiver.

SDHM further contends that the trial court erred by retaining jurisdiction over the request for public injunctive relief by applying California law, *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*), when Utah law applies under a choice of law provision, that the arbitration clause is not unenforceable under *McGill* because the provision does not prevent a plaintiff from seeking public injunctive relief in every forum, and that the Federal Arbitration Act (FAA) preempts *McGill* and requires enforcement of the arbitration agreement in its entirety.

We conclude that SDHM lacks standing because it has received all the relief it requested, and we will dismiss the matter. Further, even were we to conclude that SDHM had standing, we would conclude SDHM's arguments lack merit and affirm the order.

## BACKGROUND

### A. *The Motorcycle Purchase*

In February 2018, Miliate purchased a Yamaha motorcycle from SDHM in California. Miliate agreed to pay $14,168.87 for the motorcycle. He paid

2

$300 in cash.  He financed the remainder through a WebBank-Yamaha credit card that he obtained through SDHM.  The sales slip referenced the credit card agreement.

Miliate signed a credit application acknowledging that he received and read WebBank's Yamaha Credit Card Account Customer Agreement (the credit card agreement), which contained an arbitration provision.  The arbitration provision was contained in section 36 of the credit card agreement.  Section 36(a) explained that Miliate, WebBank, or "Yamaha (including its affiliates and dealers)" could "elect arbitration of any Claim," and "require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration."  It defined a "Claim" to include "any . . . claim, dispute, or controversy . . . relating to or arising out of [Miliate's] application for an origination of this Account, this Agreement, [his] Account, or the relationship between [him] and us, including (except to the extent provided otherwise in the last sentence of section (f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement."  (§ 36(a).)  It further stated, "The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable."  (*Ibid.*)

Section 36(f) of the credit card agreement contained a class action waiver barring all class, representative, or collective claims, including claims brought as a private attorney general on behalf of others:  "NO ARBTIRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS

3

CLASS, REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT." Section 36(f) also prohibited an award in arbitration from determining the rights, obligations or interests of anyone other than a named party or from making an award for the benefit of, or against, any named party unless consented in writing by all parties. It further stated, "[a]ny challenge to the validity of this section (f) shall be determined exclusively by a court and not by the administrator or any arbitrator."

Section 36(g) stated the arbitration provision was governed by the FAA. Section 36(h) provided: "If any portion of this Arbitration Provision other than section (f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section (f) are finally adjudicated pursuant to the last sentence of section (f) to be unenforceable, then no arbitration shall be had." Section 36(h) concluded: "THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. SUBJECT TO SECTION (b),[1] THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY."

The credit card agreement also contained a choice of law clause in section 32, separate from the arbitration provision, which stated, "This Agreement is governed by applicable federal law and by Utah law. If any

---

1    Section 36(b) allowed a customer to opt out via mail within 30 days of applying for an account.

part of this Agreement is unenforceable, the remaining parts will remain in effect."

B. *The Lawsuit*

In July 2018, Miliate filed a complaint against SDHM on behalf of himself and other similarly-situated consumers. In it, he alleged SDHM had violated and was continuing to violate the Rees-Levering Automobile Sales Finance Act (Rees-Levering) by failing to provide customers with a single document containing all the financing terms for the vehicle purchased made with a conditional sales contract. Miliate alleged SDHM was required to provide consumers with a "single document contain[ing] statutorily mandated disclosures relating to the purchase and financing of any motor vehicle," and was violating Rees-Levering, the Consumers Legal Remedies Act (CLRA), and Business and Professions Code section 17200, et seq. (the Unfair Competition Law, or the UCL) by "failing to provide buyers with a single document setting forth terms of closed-end financing for retail installment sales of motorcycles."

The complaint essentially alleges that SDHM induces customers to finance motorcycles with a WebBank credit card, which is an open-ended credit arrangement that increases the customer's cost substantially over time. Miliate also alleges that SDHM makes the transaction look like a "cash transaction," which is exempt from Rees-Levering, when the financing arrangement is really a conditional sales contract in which WebBank takes a security interest in the motorcycle that does not vest in the customer until after the customer makes all the payments due to WebBank. As a result, the purchase agreement is governed by Rees-Levering. Miliate alleges that SDHM's business practices offend public policy, and that a successful

5

outcome of the suit will enforce rights that affect the public interest and will protect the general public from unlawful and unfair practices.

Among the relief requested, Miliate seeks an injunction prohibiting SDHM from selling the motor vehicles "without first providing the consumer with a single document containing all of the agreement of SDHM and the consumer with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or other evidence of indebtedness in accordance with Civil Code §2981.9." It also seeks an injunction preventing SDHM from selling motor vehicles "without first providing the consumer with all disclosures mandated by Civil Code §2982 in a single document."

In May 2019, SDHM moved to compel arbitration of the claims arising out of the purchase of the Yamaha motorcycle pursuant to the WebBank-Yamaha credit card "on an individual, non-class basis, and for the imposition of a stay of the litigation as between Miliate and SDHM pending completion of the arbitration." The corresponding memorandum of points and authorities sought arbitration "on an individual, non-class basis." The motion did not ask the court to compel Miliate's class allegations and claims to arbitration or to rule on the enforceability of the class action waiver.

Militate opposed the motion, contending its complaint challenged only the purchase agreement with SDHM and not the credit card agreement with WebBank, and SDHM was not a third party beneficiary to the credit card agreement's arbitration provision. He also argued California law applied, and the arbitration agreement violated California law because it waived his rights to obtain a public injunction in violation of *McGill*.

Following a hearing in October 2019, the court granted SDHM's motion to compel arbitration of the individual claims. The court concluded SDHM

was an intended third party beneficiary of the credit card agreement. It followed California's approach to analyzing conflicts of law and concluded there was no substantial relationship to Utah law, so California law applied. It also explained that the predispute waiver of the right to seek public injunctive relief under the UCL and the CLRA was invalid and unenforceable under California law, and it concluded California had a greater material interest in protecting consumers than any interests held by Utah. Applying California law, the court "invalidate[d] the arbitration clause insofar as it purports to waive plaintiff's statutory rights to seek public injunctive relief in subsection [36](f) pursuant to *McGill* . . . ." It applied section 32 of the credit card agreement and left "the remaining provisions of the Arbitration Agreement . . . unaffected." It ordered the individual causes of action to arbitration, and concluded the class claims regarding the purchase of the Yamaha motorcycle were to remain in court.

Later that month, the parties stipulated that individual claims would be arbitrated, class claims would remain in court, the claims for public injunctive relief would remain in court, and all claims not ordered to arbitration would be stayed pending the outcome of the arbitration. Pursuant to the stipulation, the court stayed the action pending the arbitration.

SDHM timely appealed. Recognizing that ordinarily an order granting a motion to compel arbitration is not appealable (*Lacayo, supra*, 38 Cal.App.5th at p. 253; *Wheeler v. St. Joseph Hospital* (1973) 63 Cal.App.3d 345, 353), we requested the parties submit letter briefs explaining why the order is appealable.

Because SDHM maintained the trial court order effectively denied a portion of its motion to compel, and orders denying motions to compel are

appealable (Code Civ. Proc., § 1294, subd. (a); *Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 749 (*Clifford*)), we permitted the appeal to proceed, alerting the parties that appealability could be addressed in the appellate briefing and could be subject to our further consideration.

DISCUSSION

I

APPEALABILITY

Before a party can appeal an order, that party must be aggrieved. (*Nevada County Office of Education v. Riles* (1983) 149 Cal.App.3d 767, 779.) A party not aggrieved by an order does not have standing to attack it. (*Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230, 244.)  Additionally, an issue is moot when the reviewing court cannot provide effectual relief or affect the matter ultimately in issue.  (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10.)  Appellate courts consider postjudgment occurrences that cause an appeal to become moot and thus subject to dismissal.  (*Old Nat'l Fin. Servs., Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 467; *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)

We begin by asking whether SDHM has standing to appeal the decision as an aggrieved party and whether any postjudgment events have caused the appeal to become moot.  The original motion to compel arbitration requested "an order compelling arbitration of plaintiff Blake Miliate's claims arising out of the purchase of a Yamaha motorcycle pursuant to a WebBank-Yamaha credit card on an individual, non-class basis, and for the imposition of a stay of the litigation as between Miliate and SDHM pending completion of the arbitration."  The corresponding memorandum of points and authorities asked the court to compel arbitration "on an individual, non-class basis."

8

It also explained that under the terms of the arbitration provision, Miliate had agreed that no arbitration would proceed on a class, representative, or collective basis; thus, SDHM was seeking arbitration on an individual, non-class basis. SDHM explained that the arbitration clause at play did not "purport to waive a consumer's right to seek a public injunction under the UCL or CLRA in the proper judicial forum," and the arbitration clause permitted Miliate to seek a public injunction in court.

The trial court sent Miliate's individual causes of action to arbitration and delegated to the arbitrator determination of whether any of the issues should be arbitrated. The trial court did not issue a stay of the litigation pending completion of the arbitration. However, the parties subsequently entered a stipulation to stay court proceedings pending the completion of arbitration.

SDHM ultimately received all the relief it requested. It asked the trial court to compel arbitration of Miliate's individual, non-class claims, and the court ordered "plaintiff's individual causes of action" to arbitration. SDHM also requested a stay of litigation pending completion of arbitration, which, although not granted by the court, was stipulated to post-order. The stipulation mooted the issue regarding the specific relief that was denied. Moreover, the relief SDHM requests in its appeal, that we "remand with directions to enter a new order compelling arbitration of Miliate's individual claims and staying court proceedings on any public injunction claim he may assert until after arbitration is completed," is the current procedural posture of the case. Accordingly, there is no requested relief which we can grant that has not already been provided to SDHM, and the matter must be dismissed.

A. *Miliate's Request for Public Injunctive Relief*

Despite receiving the actual relief requested, SDHM appeals on the basis that its motion was functionally denied because (1) the court retained jurisdiction over claims for public injunctive relief when the complaint does not validly allege such claims; (2) the court granted relief different from the relief SDHM requested; and (3) the only claims available are individual claims because Miliate waived class arbitration and agreed arbitration was the only available venue once compelled by either party.

1. *Legal Principles of Public Injunctive Relief*

Private injunctive relief "primarily 'resolve[s] a private dispute' between the parties [citation] and 'rectif[ies] individual wrongs' [citation], and that benefits the public, if at all, only incidentally." (*McGill*, *supra*, 2 Cal.5th at p. 955.) In contrast, public injunctive relief " 'by and large' benefits the general public [citation] and . . . benefits the plaintiff, 'if at all,' only 'incidental[ly]] and/or as 'a member of the general public' [citation]." (*Ibid*.) Therefore, in contrast to relief that has the primary purpose of redressing an injury to an individual plaintiff or a group of individuals similarly situated to the plaintiff (*ibid*), public injunctive relief seeks to enjoin practices for public benefit (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1079-1080 (*Broughton*); *Cruz v. Pacificare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315-316 (*Cruz*)). Although the Supreme Court has described the role of a plaintiff in such situations as a type of private attorney general (*Broughton*, at p. 1079), public injunctive relief is brought by private individuals on their own behalf when they have suffered an injury in fact and therefore have standing to file a private action (*McGill*, at p. 959).

Public injunctive relief is a substantive statutory remedy provided for by the UCL and the CLRA. (*McGill*, *supra*, 2 Cal.5th at p. 965.) "[A]n

10

injunction under the CLRA against a defendant's deceptive methods, acts, and practices 'generally benefit[s]' the public 'directly by the elimination of deceptive practices' and 'will . . . not benefit' the plaintiff 'directly' because the plaintiff has 'already been injured, allegedly, by such practices and [is] aware of them.' " (*Id.* at p. 955, quoting *Broughton*, *supra*, 21 Cal.4th at p. 1080, fn. 5.)  Similarly, "an injunction under the UCL or the false advertising law against deceptive advertising practices 'is clearly for the benefit of . . . the general public'; 'it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff.' " (*McGill*, at p. 955, quoting *Cruz*, *supra*, 30 Cal.4th at pp. 315-316.)

Arbitration is not a suitable forum for public injunctive relief because its purpose is to "remedy a public wrong," and there is an "inherent conflict between arbitration and a statutory injunctive relief remedy designed for the protection of the general public." (*Broughton*, *supra*, 21 Cal.4th at pp. 1080, 1082, 1083-1084 [explaining advantages a judicial forum has over arbitration in administering a public injunctive remedy].)  Accordingly, public injunctive relief claims under the UCL and CLRA are not arbitrable.  (*Id.* at p. 1084; *Cruz*, *supra*, 30 Cal.4th at p. 316.)  Additionally, an arbitration provision is invalid and unenforceable under California law to the extent it purports to waive an individual's statutory right to seek such a remedy in any forum. (*McGill*, *supra*, 2 Cal.5th at p. 961.)

### 2.  *Miliate Seeks Public Injunctive Relief*

SDHM's first argument is that the court retained jurisdiction over claims for public injunctive relief when the complaint does not validly allege such claims.  SDHM relies on *Clifford*, *supra*, 38 Cal.App.5th 745 to argue that Miliate seeks injunctive relief only for similarly-situated individuals and not public injunctive relief.  In *Clifford*, an employee filed suit alleging

various wage and hour claims and seeking injunctive relief. (*Id.* at p. 747.)
The appellate court noted that the private nature of the UCL claims were
evident from the face of the complaint because Clifford referred to wage and
hour violations directed at him, without alleging the defendant engaged in
similar conduct with other employees or the public at large. (*Id.* at p. 753.)
And the plaintiff sought an injunction to prohibit further violations of the
Labor Code and unfair business practices, but the only express beneficiary
was the plaintiff. (*Ibid.*) Additionally, the UCL claim sought to resolve a
dispute over allegedly misclassifying the plaintiff as an exempt employee, so
any public interest or incidental benefit would not have transformed the
claim into a public one. (*Clifford*, at p. 754.) Accordingly, the court concluded
the UCL claim was subject to arbitration. (*Clifford*, at p. 755.)

However, Miliate's complaint is easily distinguished from the one in
*Clifford* because Miliate does not seek injunctions for which he or other
similarly-situated persons are the primary beneficiaries. Miliate identified
alleged violations of the Rees-Levering Act and explained how the relevant
disclosure violations also violate the CLRA and the UCL. The complaint
alleges SDHM continues to engage in the identified violations, those practices
continue to injure consumers, and an injunction will result in significant
public benefit by protecting all consumers from the identified, unlawful
practices. Miliate specifically seeks an injunction prohibiting SDHM from
selling vehicles in California "without first providing the consumer with a
single document containing all the agreements" required by Civil Code
[section] 2981.9 and "with all disclosures mandated by Civil Code section
2989 in a single document." Thus, Miliate's prayer does not limit itself only
to personal relief or remedies only for class members or some other small

12

group of similarly-situated individuals. (See *Cruz*, *supra*, 30 Cal.4th at p. 315.)

Because the injunctive relief for which Miliate prays fits the Supreme Court's definition of "public injunctive relief" in *McGill*, as its primary purpose and effect would be to prohibit "unlawful acts that threaten future injury to the general public" (*McGill*, *supra*, 2 Cal.5th at p. 951), the court did not deny SDHM's motion to compel "insofar as [the court] denied SDHM's motion to compel arbitration of the purported public injunctive relief claims."

### 3. *Relief Different Than That Requested*

SDHM next argues its motion to compel was denied in part because it secured a relief different than arbitration for the individual claims, which is what it requested. SDHM offers *Lamps Plus, Inc. v. Varela* (2019) ___ U.S. ___, 139 S.Ct. 1407 to support this theory. In *Lamps Plus,* the defendant sought an order compelling individual arbitration but received an order compelling classwide arbitration. (*Id.* at p. 1414.) The U.S. Supreme Court explained there is a fundamental difference between class and individual arbitration, and a party cannot be compelled under the FAA to class arbitration absent a contractual basis for concluding the parties had agreed to do so. (*Id.* at p. 1412.) Because the arbitration provision at issue there was ambiguous regarding classwide arbitration, the court concluded there was not a sufficient basis to conclude they had agreed to allow it, and the court reversed the order compelling classwide arbitration. (*Ibid.*)

The reasoning of *Lamps Plus* is inapplicable here. There, the Supreme Court noted the shift from individual to class arbitration created a fundamental change in the relief. But here, SDHM sought only individual arbitration, and that is what the court ordered. SDHM did not request the court rule on the validity of the class action waiver or the class claims. The

13

retention of the representative and class claims in court does not change the fundamental nature of the arbitration.[2]

This case is more analogous to *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119 (*Reyes*). There, the defendant moved to compel arbitration on an individual basis, to dismiss class allegations, and to stay the civil action pending completion of arbitration (*id.* at p. 1122), all the relief SDHM now claims it sought.[3] The court severed the individual claims from the class allegations and directed them to arbitration, and it stayed the class and representative claims and retained them until arbitration was complete. (*Ibid.*) Although the court did not dismiss the class allegations in *Reyes,* the court of appeal nonetheless concluded that Macy's received all its requested relief: the individual claims were sent to arbitration, and the remaining claims were stayed pending the arbitration. (*Id.* at p. 1124.)

Here, just like in *Reyes,* the trial court granted the specific relief sought by compelling the individual claims to arbitration. Also like in *Reyes,* the court took no action with respect to the class allegations, which is even more consistent with the precise relief requested than in *Reyes* because SDHM did not request the court to dismiss class allegations. The subsequent stipulation to stay the court case pending arbitration addressed SDHM's remaining, requested relief.

---

[2] The effect of the order was merely that no class claims were sent to arbitration.

[3] SDHM attempts to distinguish itself from *Reyes* by noting that it did not ask the court to dismiss class allegations. Although the defendant in *Reyes* sought dismissal of class allegations, that is a distinction without a difference because neither court dismissed the class allegations.

14

### 4. *Class Action Waiver*

Finally, SDHM contends "the trial court's refusal to enforce the class action waiver--as specifically required by the arbitration clause--is a denial in part of the motion to compel arbitration and appealable for that reason."

Section 36(f) of the arbitration agreement prohibits an arbitration from proceeding on a class, representative or collective basis, including as a private attorney general, even if the claims were asserted in court as a class, representative, or collective action. But here, SDHM did not seek any class arbitration; it sought only the arbitration of Miliate's claims "on an individual, non-class basis" and did not request the class claims be dismissed based on the class action waiver clause.

In order to justify its claim that the trial court improperly refused to enforce the class action waiver, SDHM implies that the court failed to apply section 36(h) of the arbitration provision. Section 36(h) eliminates the right to litigate claims through a court if any party elects arbitration, thereby effectively barring class, collective, or representative claims in any forum once arbitration is invoked. SDHM's position is that because it invoked arbitration, the trial court was obligated to enforce the class action waiver, even though no class claims were directly implicated by the motion to compel individual claims to arbitration and SDHM did not ask the court to do so.

As SDHM acknowledges in its reply brief, it did not ask the court to dismiss any additional claims in connection with its motion to compel. Thus, the court's failure to do so cannot function as a denial of the motion to compel. The motion to compel arbitration did not ask the trial court to draw any conclusion about the enforceability of the class action waiver, and the court did not rule on that issue. We likewise draw no conclusion regarding that issue here.

Ultimately, SDHM has received all the relief it requested because the individual claims were sent to arbitration and the remaining claims are stayed pending the completion of arbitration.  Thus, SDHM lacks standing, and we will dismiss the matter.

II

CHOICE OF LAW

Were we to have concluded SDHM had standing to appeal because the trial court denied its motion to compel in part, we would nonetheless affirm the court's decision on the merits.

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration."  (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)  When the court's order is based on a decision of law, we employ a de novo standard of review.  (*Ibid.*)  In this case, the court's order was based on its determination that California law applied to the arbitration agreement, and the agreement failed to comply with *McGill*'s requirement that public injunctive relief remain available in some forum.  Accordingly, we review the superior court's order de novo.  (See *ibid.*)

SDHM contends the trial court erred by holding the arbitration clause's class action waiver was invalid under *McGill*, challenging the court's determination that California law applies to the transaction between Miliate

16

and SDHM instead of Utah law.[4]  We begin by considering the appropriate applicable law.

California follows section 187 of the Restatement Second of Conflict of Laws.  (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465 (*Nedlloyd*).)  "Briefly restated, the proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue ....' (Rest., § 187, subd. (2).)  If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Id.* at p. 466, fns. omitted.)

---

[4]    SDHM contends the court erroneously found that the arbitration was invalid under California law because the choice of law provision was valid.  However, the trial court did not find the arbitration agreement invalid.  It found the arbitration clause invalid only "insofar as it purport[ed] to waive plaintiff's statutory rights to seek public injunctive relief in subsection (f) pursuant to *McGill* . . . .  The remaining provisions of the arbitration agreement remain[ed] unaffected."

17

A.  *Substantial Relationship to Utah or Reasonable Basis for Utah Law*

SDHM argues Utah has a substantial relationship to the parties and the transaction because WebBank's headquarters and bank charter are in Utah and WebBank is a party to the credit card agreement that contains the choice of law provision.  Miliate contends that SDHM lacks standing to apply the choice of law provision in the credit card agreement because it is an entity separate and distinct from WebBank, SDHM is not a signatory to the credit card agreement, the choice of law provision in the credit card agreement is separate from the arbitration provision, and nothing in the credit card agreement indicates an intent for SDHM to be a beneficiary of the choice of law provision.

California courts have held that a substantial relationship to a chosen state exists when parties to the contract are domiciled in the state. (*Hambrecht & Quist Venture Partners et al. v. American Medical International, Inc.* (1995) 38 Cal.App.4th 1532, 1546 (*Hambrecht*).) Additionally, if one of the parties to the contract resides in the foreign state, that gives the parties "a reasonable ground for choosing that state's laws." (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 834-835 (*ABF Capital Corp.*).)  "The same principle should apply when the intended third party beneficiary of the contract resides in the chosen state."  (*Id.* at p. 835.)

Here, WebBank is domiciled in Utah, which establishes a substantial relationship between the parties to the credit card agreement that contains the choice of law provision and Utah (*Hambrecht, supra,* 38 Cal.App.4th at p. 1546) and also provides a reasonable ground for choosing Utah law (*ABF Capital Corp., supra*, 130 Cal.App.4th at pp. 834-835).  But WebBank is not a party to the lawsuit.  And SDHM, an intended third party beneficiary of the

18

contract, does not reside in the chosen state. (*Ibid.*) Aside from its designation as a third party beneficiary, SDHM has no connection to Utah.

The trial court concluded that because WebBank was not a party in the action, Utah had no substantial relationship with the parties to the action, and it noted the choice of law inquiry could end there. Division Three of the Fourth Appellate District reached a different conclusion under an identical provision in *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691, 700 (*Mejia*), explaining that the presence of WebBank's headquarters and bank charter was sufficient to demonstrate a "substantial relationship" between a party or the transaction.

Assuming SDHM's status as a third party beneficiary of the credit card agreement establishes either a substantial relationship to Utah or demonstrates a reasonable basis for applying Utah law, Miliate successfully demonstrates that Utah law is contrary to a fundamental policy of California, and California has a " 'materially greater interest than the chosen state in the determination of the particular issue' " involved here. (*Nedlloyd*, *supra*, 3 Cal.4th at p. 466; Restatement Second Conflict of Laws, § 187.) Thus, as we explain, the choice of Utah law should not be enforced.

B. *California's Fundamental Policies*

SDHM contends that Utah law is not contrary to any fundamental policy of California because both states favor arbitration, and the differences in substantive law between California and Utah were not properly before the court. SDHM also contends "Miliate cannot show that application of Utah law would deny him the right to pursue adequate relief" because Utah's consumer protection laws "broadly prohibit[ ] unfair and deceptive acts in consumer transactions" and "provide[ ] aggrieved consumers various remedies, including damages, restitution, and equitable relief . . . . Thus,

19

applying Utah law and dismissing plaintiffs' UCL and CLRA claims would not violate any fundamental policy of California . . . ."

Miliate argues application of Utah law would strip him of substantive protections offered by California, including those provided by the Rees-Levering Act, which was designed to protect purchasers of motor vehicles against excessive charges through full disclosure of all items of cost, a protection which is not waivable. Miliate also points to similar, fundamental policy protections afforded by the CLRA and the UCL, statutes inapplicable under Utah law.

While we tend to agree that the Rees-Levering Act, the CLRA, and the UCL enforce fundamental California policies protecting consumers and may provide protection unavailable under Utah law, we need not reach a conclusion on this point because, as Miliate notes, "California law provides heightened protections against unconscionable contracts" and here "applying Utah law would . . . preclud[e] Miliate from contending as he did below that the arbitration agreement runs afoul of [*McGill*]," case law expressing a fundamental California policy.

The California Supreme Court's decision in *McGill* expresses the state's fundamental policy against enforcing a contractual waiver of the right to seek a public injunction in any fora. (*McGill, supra,* 2 Cal.5th at p. 961.) Accordingly, applying Utah law would conflict with California's fundamental interest in protecting Miliate's right to seek public injunctive relief from SDHM's allegedly illegal practices.

SDHM contends the public policy underpinning *McGill* is inapplicable because Miliate did not actually seek public injunctive relief and also argues the arbitration agreement does not waive the right to seek public injunctive relief in all fora. Having detailed *ante* that Miliate sought public injunctive

20

relief, we consider next whether the arbitration provision bars public injunctions in all fora, in contravention of California law, and we conclude it does.

### 1. *The Arbitration Provision Bars Public Injunctions in Every Forum*

SDHM contends *McGill* does not apply because the arbitration clause does not preclude public injunctions in every forum. More specifically, SDHM argues that despite the arbitration clause's language that it applies to "any Claim," it does not apply to public injunction claims because those are not expressly barred in the arbitration provision and the arbitration provision should be given "the broadest possible interpretation that is enforceable." SDHM explains this means the arbitration clause implicitly excludes disputes that cannot be arbitrated lawfully.

In construing a contract, we attempt to give effect to the parties' intentions in light of the usual and ordinary meaning of the contractual language, and we consider the contract as a whole, giving effect to each part if reasonably practicable. (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 186.) "[B]ecause of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution," we "will interpret that [arbitration] provision, if reasonable, in a manner that renders it lawful . . . rather than void." (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 682 (*Pearson Dental*).)

The plain language of the contract excludes public injunctive relief. Section 36(a) of the arbitration provision allows either party to assert final and binding arbitration as the "sole and exclusive forum and remedy for resolution of a Claim," unless the purchaser opts out as provided in section 36(b). Section 36(h) of the credit card agreement explains that parties lose the right to litigate claims through a court if either party elects

21

arbitration, and they "waive their rights to litigate such claims in a court before a judge or jury upon election of arbitration by any party." Section 36(f) of the agreement prohibits arbitration from proceeding on a class, representative, or collective basis. Thus, once SDHM moved to compel arbitration under section 36(a) of the agreement, arbitration became the only available forum to remedy the claims under section 36(h) of the agreement. Because there could be no arbitration of any class, representative, or collective claims under section 36(f), only individual claims could be arbitrated. Further, because arbitration became the sole forum, it excluded the court from hearing class, representative, or collective claims because those rights had been waived under section 36(h).[5]

Additionally, a private individual has an unwaivable, statutory right to file a private action and request public injunctive relief on his own behalf seeking a remedy to enjoin conduct that is injurious to the public, including public injunctive relief under the CLRA and the UCL. (*McGill, supra,* 2 Cal.5th at pp. 959-960.) The arbitration agreement prevents an individual from exercising this unwaivable, statutory right in court because section 36(h) of the agreement provides that a party loses the right to litigate claims through a court if any party elects arbitration. Thus, it does not matter if the request for public injunctive relief is treated as a representative claim or an individual one; the result would be the same under the terms of the arbitration provision: it is barred.

SDHM argues these provisions merely prevent the arbitrator from hearing claims unsuitable for arbitration and maintains that claims not

---

[5]    We view the court's retention of class claims as a product of SDHM's limited request to arbitrate only individual claims, not a determination that Miliate necessarily will be permitted to pursue those claims.

22

suitable for arbitration are simply excluded from the arbitration agreement. But because arbitration becomes the only available forum once it is invoked, the arbitration provision effectively excludes class, representative, or collective actions as well as individual claims for public injunctive relief from being litigated at all. This violates fundamental California policy regarding public injunctions because its effect is to prevent Miliate from seeking a public injunction in all fora. (*McGill, supra,* 2 Cal.5th at pp. 961.) Thus, applying Utah law would conflict with California's fundamental interest in protecting Miliate's right to seek public injunctive relief from SDHM's allegedly illegal practices.

By invalidating the arbitration clause only "insofar as it purport[ed] to waive plaintiff's statutory rights to seek public injunctive relief," the trial court here applied section 32 of the credit card agreement, which stated that if "any part of [the] agreement [were] unenforceable, the remaining parts [would] remain in effect." In so doing, the court interpreted the arbitration in a manner to render it lawful rather than void. (*Pearson Dental, supra,* 48 Cal.4th at p. 682.)

In sum, fundamental California policy makes waiving statutory rights to public injunctive relief unenforceable. (*McGill, supra,* 2 Cal.5th at p. 961.) To the extent the arbitration agreement prohibited Miliate from seeking such

relief in court by asserting arbitration, the court properly found it unenforceable.[6]

### 2. *Material Interest*

We likewise conclude that California has a materially greater interest than Utah in the determination of the particular issue involved in this case. (*Nedlloyd, supra,* 3 Cal.4th at p. 465.) "[T]he state whose interests would be 'more impaired' if its law were not applied" is the one with a materially greater interest. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 920.)

SDHM argues that Utah has a "compelling interest in regulating banks chartered within its borders." It maintains that this interest extends to regulating and interpreting its banks' interstate credit card agreements, and it contends that Miliate seeks a ruling that would invalidate the WebBank-Yamaha credit card program in California and impair the bank's interests even though the bank is not a party to the case. However, SDHM's focus on the consequences to WebBank are misplaced. The complaint does not challenge the terms of the credit card agreement with WebBank. Instead, the complaint focuses on SDHM's practices, and SDHM is a California corporation, domiciled in California, and doing business in California. The

---

[6] We are not persuaded by SDHM's argument that the parties are presumed to know and have in mind all applicable California laws when entering into an agreement governed by Utah law, thereby excluding public injunction from the meaning of "claims." While we may be able to reasonably read the purchase agreement for the Yamaha motorcycle to incorporate such public policy limitations because it was entered into in California by two parties domiciled in California, it contains no choice of law provision, and it explains how California law applies to contract cancellation options, there would be no reason for parties to an agreement governed by Utah law to consider California law limitations.

complaint seeks to evaluate, penalize and correct SDHM's alleged illegal practices; the complaint does not implicate Utah's regulation interests at all.

The particular issue involved in this case is the enforceability of an arbitration provision that bars Miliate from pursing public injunctive relief. Neither party supplies us a legal citation regarding whether Utah recognizes public injunctive relief. However, our colleagues in the Fourth Appellate District, Division Three relied on representations from the parties to an identical arbitration provision when they concluded "Utah law does not afford the same protection to the right to seek a public injunction" that California does (*Mejia, supra,* 54 Cal.App.5th at p. 701), and SDHM does not point to any public injunctive relief available under Utah law. We are convinced California has a greater material interest than Utah does in the application of its laws to the parties' dispute and that California's interests would be more seriously impaired if its policy were subordinated to the policy of Utah.

To enforce the arbitration provision in its entirety would mean permitting an out-of-state business to limit unwaivable statutory protections for California citizens regarding agreements for the purchase and sale of products entered into between California parties. California courts are not bound to enforce a contractual conflict of law provision which would be

contrary to the state's fundamental policy.[7]  Accordingly, the trial court properly concluded California law applies.

### 3. *FAA Preemption*

Finally, SDHM argues the FAA preempts *McGill*.  Footnote 8 of SDHM's opening brief acknowledges that we are bound by *McGill* and states that it raises the preemption point "to preserve it for appellate review by the California or United States Supreme Courts."

## DISPOSITION

The matter is dismissed.  Parties to bear their own costs on appeal.


HUFFMAN, Acting P. J.


I CONCUR:



HALLER, J.

---

[7]    In *Mejia,* the court applied the "poison pill" provision of section 36(h) of the arbitration agreement, which stated that " '[i]f an arbitration [were] brought on a class, representative, or collective basis, and the limitations on such proceedings in section (f) are finally adjudicated pursuant to the last sentence of section (f) to be unenforceable, then no arbitration shall be had.' " (*Id.* at pp. 704-705.)  The defendant in *Mejia* invoked arbitration on all claims, and the court concluded that the arbitration provision's limitation on public injunctive relief was unenforceable under *McGill,* so no arbitration could be compelled.  (*Ibid.*)  We reach a different conclusion here not because we interpret the poison pill provision differently, but because here SDHM invoked arbitration only for individual claims and not "on a class, representative, or collective basis."  Thus, the poison pill provision did not apply.

Aaron, J., Concurring in the result.

I concur in the majority's conclusions that Miliate's complaint does allege claims for public injunctive relief, that California law, not Utah law, governs the underlying dispute in this case and that, to the extent the arbitration agreement prohibits Miliate from seeking public injunctive relief, the agreement is unenforceable under *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945 (*McGill*). I also agree with the majority that San Diego House of Motorcycle's (SDHM) appeal of the trial court's ruling on SDHM's motion to compel arbitration should be dismissed. SDHM acknowledges that if California law, and not Utah law applies, and if Miliate did seek a public injunction, the claims for public injunctive relief are not arbitrable under the authority of *McGill*. Under those circumstances, SDHM asserts that the arbitration provision "does not bar Miliate from seeking a public injunction in court." Because the trial court retained the claims for public injunctive relief and has not issued a ruling as to the fate of the class claims, and the court otherwise granted SDHM's motion to compel arbitration, there are presently no issues that are ripe for appeal. While I disagree with the majority's assertion that SDHM "received all the relief it requested" (Maj. Opn. *ante*, p. 2) in its motion to compel arbitration, I do agree with the majority's implicit conclusion that the enforceability of the class action waiver is not properly before this court in this appeal and that SDHM's appeal should be therefore be dismissed.

I write separately because I believe that, in stating that SDHM did not ask the trial court to rule on the enforceability of the class action waiver and that SDHM requested only that the court order arbitration "of Miliate's individual claims," the majority misstates the relief that SDHM requested in its motion to compel arbitration and that its discussion is, as a result,

1

unnecessarily confusing in certain respects. It appears that the lack of clarity is attributable at least in part to apparent inconsistencies in the trial court's order, which I will attempt to clarify.

Miliate's complaint, labeled "Class Action," pleads causes of action under 1) the Rees-Levering Automobile Sales Finance Act, Civil Code section 2981 et seq. (first cause of action); 2) the Consumers Legal Remedies Act (CLRA), Civil Code section 1750 et seq. (second cause of action); and 3) Business and Professions Code section 17200 et seq., (UCL) (third cause of action). In his first cause of action, Miliate alleges that he and the members of the class have been damaged in an amount to be proven at trial and requests injunctive relief, attorney fees and costs. In his second cause of action, Miliate requests injunctive relief only. In his third cause of action, Miliate requests declaratory and injunctive relief, and restitution.

The WebBank Yamaha Credit Card Account Customer Agreement (Agreement) contains an arbitration provision (Account Agreement section 36). *Within the arbitration provision* is a class action waiver that provides in relevant part, "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS) . . . ." (Account Agreement, section 36(f)). The majority asserts that, in SDHM's motion to compel arbitration, "SDHM did not request the court rule on the validity of the class action waiver or the class claims." (Maj. Opn. *ante*, p. 13.) According to the majority, "SDHM's position is that because it invoked arbitration, the trial court was obligated to enforce the class action waiver, *even though no class claims were directly implicated by the motion to compel individual claims to arbitration and SDHM did not ask the court to do so.*" (Maj. Opn. *ante*, p. 15, italics added.) The majority is thus of the view that

2

SDHM never asked the trial court to enforce the class action waiver contained in the account agreement, but rather, requested only that the court order arbitration of Miliate's individual claims.

SDHM's motion to compel arbitration is not, in my view, ambiguous with respect to the relief requested. Contrary to the majority's repeated assertion that SDHM moved to compel arbitration "*of [Miliate's] individual claims*" only, (Maj. Opn. *ante*, pp. 1, 15, italics added) the notice of motion and motion clearly indicate that SDHM moved to compel arbitration of *all* of Miliate's claims *on an individual, nonclass basis*. In its notice of motion, SDHM states that it will move the court "for an order compelling arbitration of plaintiff Blake Miliate's claims arising out of the purchase of a Yamaha motorcycle pursuant to a WebBank-Yamaha credit card *on an individual, non-class basis*." (Italics added.) In its motion, SDHM requested that the trial court compel arbitration "of its dispute with . . . Blake Miliate" "on an individual, non-class basis," arguing that the arbitration provision was sufficiently broad to cover *all of the claims* in Miliate's complaint. In a section titled, "The Court Should Compel Arbitration On An Individual, Non-Class Basis," the motion expressly notes that Miliate agreed to arbitrate "all claims" as set forth in the Agreement, and that he further agreed that " 'NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS.' " It thus seems clear that, in moving to compel arbitration of Miliate's entire "dispute" with SDHM, while noting the class, representative and collective action waiver contained in section (f) of the arbitration provision, asserting that the arbitration provision covered *all* of Miliate's claims and, asking the court to compel arbitration of Miliate's claims "on an individual, non-class basis," SDHM was arguing that all of Miliate's claims were subject to arbitration and that he was barred by the

3

class action waiver from pursuing any claims on a class basis. SDHM's request that the court compel arbitration of Miliate's claims "on an individual, non-class basis," was essentially the same as asking the court to compel arbitration and also to enforce the class action waiver.

Miliate clearly understood SDHM's motion to compel arbitration to be a request to compel arbitration of *all* of the claims in his complaint on an individual basis, and at least implicitly, to enforce the class action waiver. In his opposition to the motion to compel arbitration, Miliate asserted that SDHM has asked the court "to order Plaintiff to litigate all of his claims in arbitration." (Italics omitted.) None of Miliate's claims were pled as individual claims. Rather, Miliate's entire complaint was pled as a putative class action.

It appears that the trial court also understood SDHM's motion to compel arbitration to be a request to rule on the enforceability of the class action waiver, which, as noted, is contained within the arbitration provision, and to order that all of Miliate's claims be arbitrated. The trial court noted in its ruling that "[t]he Agreement . . . provides at subsection [36](f) that no arbitration shall proceed as a class representative or collective basis" and that any challenge to the validity of subsection (f) "shall be determined exclusively by the court." After finding that California law governs the account agreement and that under *McGill*, "[a]ny waiver in a predispute arbitration agreement of the right to seek public injunctive relief under the UCL and CLRA is invalid and unenforceable under California law," the court states, "Applying California law, the court will invalidate the arbitration clause *insofar as* it purports to waive plaintiff's statutory rights to seek public injunctive relief in subsection (f) pursuant to *McGill* . . . . *The remaining provisions of the Arbitration Agreement remain unaffected*." (Italics added.)

4

Thus, the trial court ruled that the arbitration provision was unenforceable only to the extent that it would prohibit Miliate from seeking public injunctive relief.

While the trial court's order states that SDHM's motion to compel arbitration is "GRANTED," the court found that the requests for public injunctive relief were not arbitrable. The order states, "Finally, because plaintiff has statutory claims and is seeking restitution as well as public injunctive relief, *the court will order the arbitrable portions to arbitration.* (*Clifford v. Quest Software, Inc.* (2019) 38 Cal.App.5th 745, 750 [(*Clifford*), italics added.])" In *Clifford*, the trial court denied in its entirety a motion to compel arbitration of a UCL claim, "citing without discussion our Supreme Court's decision in *Cruz* [*v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303]." (*Clifford, supra*, at p. 749.) The *Clifford* court reversed, explaining that in *Cruz*, the Supreme Court held that "UCL claims for *restitution* 'are fully arbitrable' [citation], but UCL claims for *public injunctive relief* cannot be arbitrated." (*Id.* at p. 750.) The *Clifford* court explained, "If a plaintiff's UCL cause of action includes both arbitrable and inarbitrable claims, such as a request for restitution and a request for public injunctive relief, the trial court must sever the cause of action, order the arbitrable portion to arbitration, and stay the inarbitrable portion pending the completion of arbitration." (*Ibid.*, citing *McGill, supra*, 2 Cal.5th at p. 966.)

There is a lack of clarity as to the procedural posture of the case, as a result of certain language that the trial court employed in its order. In its order, the court states, "**MOTION TO COMPEL ARBITRATION by defendant House of Motorcycles, Inc. dba North County's House of Motorcycles is GRANTED**." The court goes on to state, "*[P]laintiff's individual causes of action* will be sent to arbitration and if the arbitrator

5

determines those issues should be arbitrated, the arbitration will concern only the purchase of the Yamaha motorcycle. . . . *Plaintiff's class claims regarding the purchase of the Yamaha motorcycle remain in court . . . .*" (Italics added.)  The trial court's references to Miliate's "individual causes of action" and his "class claims" in this context is perplexing.  In stating in its order that the court would invalidate the arbitration clause *insofar as* the arbitration provision purported to waive Miliate's statutory rights to seek public injunctive relief, and at the same time expressly referencing the class action waiver provision contained in the arbitration provision in the process of making its ruling, and severing Miliate's statutory claims to send the "arbitrable portions to arbitration," the court essentially ruled that it would *enforce* the arbitration provision—which includes the class action waiver, *except* as to the claims for public injunctive relief.

The fact that the trial court retained Miliate's claims for public injunctive relief does not mean that the court was not enforcing the class action waiver.  Claims for public injunctive relief are not considered to be class, representative or collective claims under California law.  Rather, public injunctive relief is a "*substantive statutory remedy* that the Legislature, through the UCL, the CLRA, and the false advertising law, has made available to those . . . who meet the statutory standing requirements for filing a private action." (*McGill*, *supra*, 2 Cal.5th at p. 965.)  Thus, as in *Clifford*, claims for public injunctive relief may be brought by an individual plaintiff such as Miliate.  "[A] private individual who has 'suffered injury in fact and has lost money or property as a result of' a violation of the UCL . . . and who therefore has standing to file a private action" is not precluded "from requesting public injunctive relief in connection with that action.  A person who meets these requirements is 'fil[ing]' the 'lawsuit[ ]' or 'action[ ]' on his or

6

her own behalf, not 'on behalf of the general public.' . . . This remains true even if the person seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is to 'prohibit and enjoin conduct that is injurious to the general public.' " (*McGill, supra*, 2 Cal.5th at p. 959, quoting in part *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077.) The trial court presumably retained the claims for public injunctive relief under the authority of *Clifford* and *Cruz not* because they are class claims, but because they are inarbitrable under *McGill*.

The trial court's intent in stating that Miliate's "class claims" would remain in court is unclear. Given the court's statement in its order that it would invalidate the arbitration provision only insofar as it prohibited Miliate from bringing claims for public injunctive relief, and the fact that class action waiver is part of the arbitration provision, the court's statement that the "class claims" would remain in court would appear to indicate only that the court has not yet dismissed those claims, *not* that those claims would be litigated in court in the future.

In any event, the propriety of the trial court's treatment of class claims that SDHM did not seek to have *arbitrated* does not appear to be properly before this court in this appeal. In *Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, a defendant sought review of a trial court's order *granting* arbitration of a plaintiff's individual claims on the ground that the court had refused to compel arbitration of the plaintiff's *representative* claims. (*Id.* at p. 1122.) The *Reyes* court concluded that it lacked appellate jurisdiction to consider such an appeal, reasoning:

> "An order denying or dismissing a motion to compel arbitration . . . is an appealable order. [Citations.] [Defendant's] attempts to justify the present appeal by arguing that by refusing to compel plaintiff to arbitrate her class claims and the claim for penalties under [the Private

Attorneys General Act (PAGA)], the trial court partially denied the motion to compel arbitration, rendering the order appealable. We do not agree. Neither literally nor functionally did [defendant] request the trial court to compel the arbitration of these claims, nor did the court refuse to do so. [Defendant] moved the trial court 'to dismiss [plaintiff's] class allegations set forth in her second amended complaint.' [Defendant's] contention is not that the representative claims should be arbitrated, but that they should be dismissed. The trial court stayed the class and PAGA claims; it has not yet determined whether some or all of these claims should eventually be dismissed or may warrant judicial relief. Even if the present order is construed as a denial of the motion to dismiss, the order is interlocutory and is not yet subject to appeal. Code of Civil Procedure section 904.1 provides the general list of appealable orders and judgments. The denial of a motion to dismiss is not among them. This section codifies the common law 'one final judgment rule' and prohibits the review of such interlocutory rulings until final resolution of the case. [Citation.]" (*Id.* at pp. 1122–1123; accord *Lacayo v. Catalina Restaurant Group Inc.* (2019) 38 Cal.App.5th 244, 254.)

Similarly, in this case, it would appear that this court lacks appellate jurisdiction to consider the trial court's treatment of class claims in an appeal from an order denying a petition to compel arbitration, since it is undisputed that SDHM never sought to have such claims *arbitrated*. However, because the majority states—erroneously, in my view—that "SDHM did *not* request the court rule on the validity of the class action waiver or the class claims," (Maj. Opn. *ante*, at p. 13, italics added), I believe it important to explain my view of the relief that SDHM sought in the trial court and the scope of the trial court's ruling.

I agree with the majority that SDHM's appeal of the trial court's order is not properly before this court and I further agree with the majority's

8

analysis and conclusions with respect to the substantive issues raised in the appeal.  However, I concur in the result because I am convinced that, contrary to the majority's assertions, SDHM clearly *did* ask the trial court to enforce the class action waiver in requesting that the court compel arbitration of all of Miliate's claims "on an individual, non-class basis," and in fact, that the court effectively agreed to do so.

AARON, J.